CLARK *v.* BOGARDUS, collector of the estate of Fisher under special letters.

A money bond or annuity bond will not be presumed paid until there is a lapse of twenty years non-payment. Nothing short of this period will do, unless there are special circumstances to aid the presumption.

Chancery will relieve an obligor from a bond upon clear evidence of the acts and declarations of a deceased obligee and where they amount to a relinquishment of intention to exact payment.

A gift of a legacy to a debtor will not of itself amount to a release of the debt, provided the testator's intention is left doubtful. There must be evidence clearly expressive of the intention—but it may be got at *aliunde.*

Bill to compel the giving up of a bond ; and, in the meantime, to restrain an action at law brought upon it.

*Margin notes:*

1834.

CLARK *v.* BOGARDUS.

*Sept.* 15. 1834.

*Bond.*
*Legacy.*
*Legatee indebted to the testator.*
*Injunction.*

The bond was dated the twenty-sixth day of June one thousand eight hundred; made by the complainant James B. Clarke in favor of Hannah Fisher; and conditioned to pay "unto the above mentioned Hannah Fisher or to her certain attorney, executors, administrators or assigns the just and full sum of one hundred pounds New-York money annually during the natural life of the said Hannah Fisher in four equal quarterly payments of twenty-five pounds on each of the first days of the months of February, May, August and November in each year during her said life."

The complainant had married Eleanor, a daughter of Hannah Fisher, who was the widow of George Fisher; and the latter having died intestate and leaving real estate, Hannah Fisher became entitled to dower. In order to obtain her release of it, the heirs at law agreed to allow her a sum of money for life (which was apportioned amongst them) and to give their separate bonds for their portions; and the bond now in controversy was given by the complainant for his share. The complainant had made payments upon the bond up to the fifth day of August one thousand eight hundred and thirteen; and no payment, as the complainant alleged, was afterwards required by Mrs. Fisher and he considered all claim as abandoned. Hannah Fisher died on the twenty-first day of March one thousand eight hundred and twenty-nine; she left a will dated in the year one thousand eight hundred and ten and in it the wife of the complainant was thus remembered:—"First to raise out of my estate in such manner as they" (her executors) "may deem best, the sum of seven hundred and fifty dollars and to pay the same to my daughter Eleanor as an evidence of my love and affection to her and in case of her death to pay the same to her children in equal parts or to their legal representatives."

On the twenty-seventh day of November one thousand eight hundred and thirty the defendant, Robert Bogardus, was appointed, by the surrogate, collector of the goods, chattels and credits of the said Hannah Fisher; and in the month of March following, the defendant brought the action of debt against the complainant upon the bond. The latter obtained an injunction restraining the suit; and a motion to dissolve such injunction now came before the court. An

answer had been filed ; but as the case is reported in order to show the general principles contained in the opinion of the court, a particular reference to such answer is not deemed necessary, especially as the Vice-Chancellor did not consider there were such special circumstances as could take the case out of the ordinary rules.

1834.

CLARK
v.
BOGARDUS.

Mr. *Sherwood,* for the defendant.

Mr. *S. A. Foote,* for the complainant; who resisted the motion for a dissolution of the injunction upon two distinct grounds : 1st, the lapse of time—and 2nd, ademption, by the legacy to the complainant's wife.

THE VICE-CHANCELLOR :—With respect to the lapse of time—from the year one thousand eight hundred and thirteen to the death of Mrs. Fisher in one thousand eight hundred and twenty-nine, and during which she suffered the bond to remain without any payment of the annuity :—it is not sufficient of itself to raise the presumption of payment or satisfaction of the bond. Twenty years is the rule in the court of chancery ; and nothing short of this period will do, provided there are no special circumstances to aid the presumption: Matthews on Pres. Ev. 379. The same writer also lays it down as a rule that a term less than twenty years will not supply the inference of an annuity's having been discharged or released, unless there is auxiliary evidence to support the presumption and make up the deficiency of time. If twenty years has elapsed, still, where the existence of the annuity has been acknowledged within this period, it will rebut any defence grounded solely on the delay : Ib. 386, 387 ; *Cupit* v. *Jackson,* Mc'Clel, 495, *Wynn* v. *Williams,* 5 Ves. 130. Lord Mansfield carried the doctrine even further at law, and held, that a jury might presume a bond paid in some cases at the end of eighteen years and even in sixteen years ; while other judges have qualified this, and considered his lordship's not the true rule, unless where aided by circumstances : Matthews, 380. Are there, then, such special circumstances in the present case? I

*Sept.* 23.

see none to warrant the inference of a discharge of the annuity.

There is another class of cases, where chancery has relieved an obligor from the payment of his bond, upon clear evidence of the acts and declarations of a deceased obligee, and where they amount to a relinquishment of the debt or to a want of intention to exact payment: as in *Wekett* v. *Raby*, 2 Br. P. C. 386 ; *Byrn* v. *Godfrey*, 4 Ves. 6 ; *Eden* v. *Smyth*, 5 Ib. 350. But there is no evidence of any such acts or declarations in the case now before the court.

There is another point to be examined : does the legacy given to Eleanor, the wife of the complainant, amount to a release of the debt upon the annuity bond ? According to a true construction of the will, the complainant's marital right would give him this legacy. Then, viewing him as a legatee, does the bequest operate as a relinquishment of the debt or annuity payable by the bond ? The rule is laid down by Mr. Roper, as follows : " Where a creditor bequeathed a legacy to his debtor, and either does not give the debt or mentions it in such a manner as to leave his intention doubtful, and, after his death, the securities are found among his papers uncancelled, courts of equity do not consider such legacy as necessarily nor even *prima facie* a release or extinguishment of the debt, but requires evidence clearly expressive of the intention to release the debt. If such intention does not appear clearly expressed or implied on the face of the will, evidence *aliunde* will be admitted :" 2 Roper on Leg. 37, 62. There are but few cases on the subject. The first to be particularly noticed is *Eden* v. *Smyth*, supra, where extrinsic evidence was admitted, not to explain but to repel the existence of a debt whereof the bonds were *prima facie* evidence ; and the conclusion which Lord Loughborough came to upon the evidence was, that the testator meant to give the legacy to his son-in-law beneficially, and that the bonds should not be enforced against him—in other words, that the residue of his estate which was given over did not include the bonds as debts or as being a part of his estate—and decreed the legacy to be paid and the bonds to be given up.

If the evidence of intention to give up or release the debt

is not clear, either from the will or by other proof, the gift of a legacy to the debtor will not of itself amount to a release : 2 Roper, 64. Thus, in *Wilmot* v. *Woodhouse*, 4 Br. C. C. 286, it was held that suffering a bond to remain uncancelled in the testator's possession, showed he did not mean to relinquish the payment of the money : if he had so intended, he could easily have torn off the seal. Even supposing he had forgotten the bond, there was an absence of intention concerning it, and such absence of intention could not be construed into a release. A gift of a legacy might be so framed as to be a release of a demand, but it must be clearly expressed ; and in this case of *Wilmot* v. *Woodhouse*, the bond was, for want of evidence, held not to be discharged.

The case of *Gould* v. *Adams*, in the Irish Exchequer, Vern. & Scriv. 258, would appear to be at variance with the preceding case ; and its authority is, consequently, doubted by Roper. But when the facts as stated in the report are considered, it will be found consistent with the other decisions. The fact of the testator's having altered his mind and given an annuity of fifty pounds instead of one hundred pounds, as first intended, in consequence of having been compelled to pay the debt for which he was surety, was sufficient evidence of his never having intended that a repayment should be enforced : for, otherwise, he would have suffered the annuity to remain at one hundred pounds.

In the present case, there is no evidence on the face of the will or *aliunde* that Mrs. Fisher intended to give up the annuity to the complainant ; and the circumstances are not enough to warrant an inference or presumption to this effect. No act or declaration is shown ; while the intention must be proved clearly and affirmatively.

Take an order dissolving the injunction.